UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

―――――――――――

№ 17-CV-0982 (JFB)

―――――――――――

JEAN SODERSTROM,

Plaintiff,

VERSUS

NANCY A. BERRYHILL,
ACTING COMMISSIONER OF SOCIAL SECURITY,

Defendant.

―――――――――――

**MEMORANDUM AND ORDER**
May 9, 2019

―――――――――――

JOSEPH F. BIANCO, District Judge:

Plaintiff Jean Soderstrom brings this action under 42 U.S.C. § 405(g) of the Social Security Act ("SSA") to challenge a final decision of the Commissioner of Social Security (the "Commissioner"). Administrative Law Judge Patrick Kilgannon ("ALJ Kilgannon" or "the ALJ") determined that plaintiff was not disabled from September 19, 2011 to November 30, 2014 ("the Relevant Period"), but was disabled as of December 1, 2014.

Plaintiff moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Plaintiff argues that the ALJ failed to adequately develop the administrative record and that, given the evidence that plaintiff cannot drive or use public transportation, the Commissioner's finding that she was not disabled before December 1, 2014 was not based on substantial evidence. Plaintiff requests that the Commissioner's decision be vacated and that the Court remand the case with instructions to award benefits. Alternatively, plaintiff requests that the Commissioner's decision be vacated and that the Court remand the case for additional administrative proceedings. The Commissioner opposes plaintiff's motion and cross-moves for judgment on the pleadings.

For the reasons set forth below, the Court denies plaintiff's motion for judgment on the pleadings, denies the Commissioner's cross-motion for judgment on the pleadings, and

remands the case to the ALJ for further proceedings consistent with this Memorandum and Order.

I. BACKGROUND

A. Personal and Work History

Plaintiff was born in January 1960. (AR 183.)[1] She attended two years of college in 2003, and has a degree in radiologic technology. (AR 36, 256.) From 2003 to September 19, 2011, plaintiff worked as an x-ray technician. (AR 257, 276.) Plaintiff's employment ended when the doctors she worked for closed their practice. (AR 37.) Although, according to plaintiff, she attempted to find new employment, her attempts were unsuccessful. (*Id.*) At some point in early 2012, plaintiff moved to Florida. (*Id.*; *see also* AR 354.) She returned to New York in October 2013. (AR 354.)

B. Medical Evidence

Although plaintiff alleged a disability onset date of September 19, 2011, the ALJ determined that she became disabled on December 1, 2014. The Court will briefly discuss the medical evidence before and after the ALJ's determined onset date.

1. Medical Evidence before December 1, 2014

On January 29, 2010, plaintiff saw Dr. Kristina Belostocki for "several year[s] of fatigue and polyarthralgia, positive [Rheumatoid Factor] and positive [Anti-Nuclear Antibody] screen." (AR 345.) Plaintiff complained of pain and stiffness in her hands, wrists, neck, lower back, knees, and feet. (*Id.*) Dr. Belostocki noted that x-rays of plaintiff's hands showed evidence suggestive of intraosseous ganglion and scapholunate interval ligamentous laxity. (AR 349.) The x-rays also contained evidence of lower cervical spine discogenic disease and uncontrovertebral joint arthopathy with associated mild bilateral neuroforaminal narrowing. (*Id.*)

Plaintiff returned to Dr. Belostocki on November 30, 2011. (AR 344.) Dr. Belostocki's treatment notes describe plaintiff as a "woman with anxiety, detached retina right eye, several years of fatigue and polyarthralgia, positive [Rheumatoid Factor] and positive [Anti-Nuclear Antibody] screen." (*Id.*) The notes indicate that plaintiff reported taking Xanax and Advil for these conditions. (*Id.*) After examining plaintiff, Dr. Belostocki concluded that plaintiff had bilateral crepitus of the first carpometacarpal joints; bilateral patellar hypermobility; tenderness of the left lateral epicondyle; bilateral spasm of her trapezius muscles; and lumbar paraspinal spasm. (*Id.*) Dr. Belostocki ordered bloodwork, prescribed Mobic, and suggested a follow-up in eight weeks. (*Id.*)

From October 18, 2011 to February 7, 2012, plaintiff attended numerous mental health counseling sessions at South Nassau Communities Hospital. (AR 354.) A report prepared by chief psychologist Rosemary O'Regan and psychology intern Jaime Holtzer indicates that plaintiff complained of feeling anxious when driving or in crowds. (*Id.*) She further reported that she had experienced several panic attacks, and felt depressed. (*Id.*) The report notes that plaintiff was diagnosed with panic disorder with agoraphobia, dysthymia, and dependent personality disorder. (*Id.*)

Over the next several months, plaintiff saw Dr. Randolph Nunag for treatment on various occasions. On June 5, 2012, plaintiff saw Dr. Nunag for anxiety. (AR 365-66.) She reported a history of depression, anxiety,

---

[1] Citations to "AR" are references to the Administrative Record.

2

and epicondylitis. (AR 365.) Dr. Nunag prescribed Xanax. (*Id.*) On December 27, 2012, plaintiff saw Dr. Nunag for chest pains, anxiety, twitching, and dizziness that had lasted for two days. (*Id.*) On January 16, 2013, plaintiff returned to Dr. Nunag. (AR 361.) The notes from that appointment indicate that plaintiff complained of pain in her right ankle, and cysts in her right hand and on the bottom of her feet. (*Id.*) Dr. Nunag referred plaintiff to a podiatrist. (*Id.*) Finally, on April 10, 2013, plaintiff visited Dr. Nunag for epicondylitis. (AR 360.) Dr. Nunag's treatment notes indicate that plaintiff had been taking Mobic prescribed to her by a rheumatologist. (*Id.*)

On March 17, 2014, plaintiff returned to the South Nassau Mental Health Counseling Center. (AR 453-58.) Plaintiff again reported a history of anxiety and panic attacks. (AR 453.) Plaintiff was diagnosed with anxiety and depression and was assigned to a therapist and psychiatrist for treatment. (AR 454-55.) Two days later, on March 19, 2014, plaintiff began therapy with Marta Laurette, and attended regular sessions until August 2014. (AR 421-22, 426-27, 431-51.)

Plaintiff was also assessed by psychiatrist Dr. Nnamdi Odiah on April 15, May 13, and June 10, 2014. (AR 432-34, 439-41, 446.) Over the course of that treatment, Dr. Odiah diagnosed anxiety, depression, and panic disorder with agoraphobia. (AR 433, 440, 447.) Dr. Odiah recommended that plaintiff continue to take Xanax for her symptoms. (AR 432-33, 439-40, 446-47.)

Plaintiff was also treated by psychiatrist Dr. Paul Agnelli on July 8 and August 5, 2014. (AR 428-30.)

2. Medical Evidence on and after December 1, 2014

After the administrative hearing in this case, ALJ Kilgannon requested that plaintiff undergo a psychological and a physical consultative examination. On December 1, 2014, Dr. Paul Herman conducted a psychiatric examination. (AR 468-72.) Dr. Herman's notes reflect that plaintiff reported long-time treatment for panic attacks. (AR 468.) Plaintiff also reported "substantial difficulty [with] being on public transportation, such as buses or trains." (AR 469.) She told Dr. Herman that she could "walk places and take taxis places, but that those other forms of transportation provide her with a great deal of anxiety." (*Id.*) Aside from her issues with public transportation, plaintiff reported no significant difficulties with activities of daily living related to psychological or psychiatric issues. (AR 470.) Dr. Herman concluded that, if plaintiff "is provided with a work site that she can walk to or take a taxi to, she appears capable [of] following and understanding simple directions and instructions, performing simple tasks, maintaining attention and concentration, maintaining a regular schedule, learning new tasks, making appropriate decisions, relating adequately with others, and appropriately dealing with stress." (AR 470-71.) In sum, he stated that the results of plaintiff's psychiatric examination were consistent with psychiatric problems, "but, in and of themselves, do not appear to be significant enough to interfere with the claimant's ability to function on a daily basis as long as the claimant's transportation difficulties can be addressed." (AR 471.) Dr. Herman diagnosed plaintiff with agoraphobia and panic disorder. (*Id.*)

Also on December 1, 2014, Dr. Linell Skeene conducted a physical examination. (AR 482-91.) Dr. Skeene's report indicates that plaintiff's primary complaint was that she had pain in both hands, which she said began in 2013. (AR 482.) Plaintiff rated the pain in her hands at a five out of ten. (*Id.*) Dr. Skeene's report further noted that plaintiff had never had injections or received

3

physical therapy. (*Id.*) Dr. Skeene noted scattered nodular formations in plaintiff's palms (*id.*), and diagnosed plaintiff with Dupuytren's contracture of both hands, plantar fasciitis of the right leg, and legal blindness in the right eye (AR 485). Dr. Skeene concluded that plaintiff's prognosis was fair, and opined that plaintiff had "moderate limitation for grasping, writing, and heavy lifting due to painful nodules of both hands." (*Id.*)[2]

Dr. Skeene also completed a medical source statement of ability to do physical work-related activities based on her consultative examination. (AR 486-92.) In her statement, Dr. Skeene opined that plaintiff was limited to (1) lifting and carrying no more than ten pounds, (2) sitting for one hour at a time and for four hours total in an eight-hour workday, and (3) standing and walking for one hour at a time and for two hours total in an eight-hour workday. (AR 487.) She further opined that plaintiff was limited to occasional reaching, handling, fingering, feeling, pushing, and pulling, and occasional operation of foot controls. (AR 488.) With respect to postural activities, Dr. Skeene opined that plaintiff could never climb ladders or scaffolds, and could occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl. (AR 489.) Dr. Skeene noted that plaintiff had visual impairments, but could avoid ordinary hazards in the workplace. (*Id.*)

On February 6, 2015, plaintiff saw Dr. Bennett H. Brown, an orthopedist, for left elbow, wrist, and hand pain, which she reported had been ongoing for six months. (AR 493-94.) Plaintiff rated her pain at an eight out of ten. (AR 493.) Dr. Brown's report indicates that he observed moderate tenderness over the left first dorsal compartment with positive Finkelstein's test.

(AR 494.) Dr. Brown diagnosed plaintiff with De Quervain's Disease. (*Id.*)

On February 26, 2015, plaintiff's primary care physician, Dr. John Bedell, completed a medical report and functional assessment of plaintiff. (AR 495-500.) The report indicates that Dr. Bedell had been treating plaintiff approximately once a month since October 30, 2014. (AR 497.) Dr. Bedell diagnosed plaintiff with panic disorder with agoraphobia, arthritis in the hands, and blindness in the right eye. (AR 495.) He reported that plaintiff's ability to grasp, release, handle, and finger objects was abnormal due to bilateral arthritis in her hands. (AR 496.) He also noted that plaintiff's ability to operate a motor vehicle was abnormal, because she experienced panic attacks and anxiety while driving. (*Id.*) With respect to activities of daily living, Dr. Bedell opined that plaintiff was restricted in her ability to shop, use public transportation, and plan daily activities. (AR 496-97.)

C. Procedural History

Plaintiff applied for social security disability benefits on May 29, 2013, alleging disability due to shoulder, neck, and elbow pain, joint and back muscle spasms, depression and anxiety, as of September 19, 2011. (AR 183-96.) After plaintiff's application was denied, she requested a hearing before an Administrative Law Judge. (AR 121.) The ALJ held a hearing on October 31, 2014, at which plaintiff testified by telephone. (AR 29-48.)

The ALJ held the record open following the hearing. As noted above, the ALJ requested that plaintiff undergo a physical and a psychological examination. He also "made every reasonable effort to obtain pertinent medical evidence from treating

---

[2] Plaintiff contends that Dr. Skeene diagnosed her with fibromyalgia. (Pl. Br. 12.) However, Dr. Skeene's report notes only that plaintiff had been diagnosed with fibromyalgia in the past. (AR 482, 485.)

4

sources identified by [plaintiff]." (AR 12.)

After receiving additional medical information, the ALJ issued a May 22, 2015, partially favorable decision finding plaintiff not disabled from September 19, 2011 to November 30, 2014, and disabled as of December 1, 2014. (AR 9-28.) Plaintiff requested a review of the ALJ's decision by the Appeals Council (AR 7), which was denied (AR 1-6). Accordingly, the ALJ's determination became the final decision of the Commissioner.

Plaintiff commenced this lawsuit on February 21, 2017. (ECF No. 1.) On November 22, 2017, plaintiff moved for judgment on the pleadings. (ECF No. 12.) The Commissioner submitted a cross-motion for judgment on the pleadings on March 22, 2017. (ECF No. 18.) Neither party submitted a reply. The Court has fully considered the parties' submissions.

II. STANDARD OF REVIEW

A district court may set aside a determination by an ALJ "only if it is based upon legal error or if the factual findings are not supported by substantial evidence in the record as a whole." *Greek v. Colvin*, 802 F.3d 370, 374-75 (2d Cir. 2015) (citing *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008); 42 U.S.C. § 405(g)). The Supreme Court has defined "substantial evidence" in Social Security cases to mean "more than a mere scintilla" and that which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Furthermore, "it is up to the agency, and not [the] court, to weigh the conflicting evidence in the record." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). If the court finds that there is substantial evidence to support the Commissioner's determination, the decision must be upheld,

"even if [the court] might justifiably have reached a different result upon a *de novo* review." *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (citation omitted); *see also Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998) ("Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner.").

III. DISCUSSION

A. The Disability Determination

A claimant is entitled to disability benefits if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual's physical or mental impairment is not disabling under the SSA unless it is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id*. § 1382c(a)(3)(B).

The Social Security Regulations establish a five-step procedure for determining whether a claimant is entitled to social security benefits. *See* 20 C.F.R. §§ 404.1520, 416.920. The Second Circuit has summarized this procedure as follows:

> The first step of this process requires the [Commissioner] to determine whether the claimant is presently employed. If the claimant is not employed, the [Commissioner] then determines whether the claimant has a "severe impairment" that limits her capacity to work. If the claimant has such an impairment, the [Commissioner] next considers

5

whether the claimant has an impairment listed in Appendix 1 of the regulations. When the claimant has such an impairment, the [Commissioner] will find the claimant disabled. However, if the claimant does not have a listed impairment, the [Commissioner] must determine, under the fourth step, whether the claimant possesses the residual functional capacity to perform her past relevant work. Finally, if the claimant is unable to perform her past relevant work, the [Commissioner] determines whether the claimant is capable of performing any other work.

*Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). The claimant bears the burden of proof with respect to the first four steps; the Commissioner bears the burden of proving the last step. *Id.*

In making these determinations, the Commissioner "must consider four factors: '(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience.'" *Id.* (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam)).

B. The ALJ's Ruling

At the first step in the five-step process, the ALJ determined that plaintiff had not engaged in substantial gainful activity since September 19, 2011, the alleged onset date of her disability. (AR 14.)

At the second step, the ALJ determined that, since September 19, 2011, plaintiff had suffered from "severe impairments," including mild degenerative joint disease, contracture of both hands, and plantar fasciitis in the right leg. (AR 14-17.) However, after considering plaintiff's history of psychological treatment, and the opinions from Dr. Herman and Dr. Bedell regarding plaintiff's mental health, the ALJ determined that plaintiff did not have a severe mental impairment. (AR 16-17.) In reaching this conclusion, the ALJ explained that "[t]he only limitation reported by Drs. Bedell and Herman is the claimant's desire not to take public transportation and her problems driving, but alternative means of travel are available and this factor is not generally considered to be disabling." (AR 17.) The ALJ further explained that both doctors found that plaintiff was capable of remembering and carrying out job instructions, performing complex tasks, making judgments and decisions, dealing with stress, and relating appropriately with others. (AR 16.)

At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (AR 17-18.) Accordingly, the ALJ proceeded to determine plaintiff's residual functional capacity ("RFC").

The ALJ found that, prior to December 1, 2014, plaintiff had the RFC to perform light work, with several limitations. (AR 18.) In particular, the ALJ concluded that, during that time period, plaintiff could (1) only occasionally climb ladders, ropes, scaffolds, ramps or stairs; (2) only occasionally balance, stoop, crouch, kneel, or crawl; and (3) could not work around dangerous machinery or automotive equipment due to limited peripheral vision. (AR 18-20.) In reaching this conclusion, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to

6

cause her symptoms, but that plaintiff's statements about the intensity, persistence, and limiting effects of these symptoms were not entirely credible prior to December 1, 2014. (AR 20.) In particular, the ALJ concluded that plaintiff's statements were not consistent with her treatment records or her activities of daily living. (AR 20.) He further noted that "no medical opinions state that the claimant was unable to work in any capacity" prior to December 1, 2014. (*Id.*) The ALJ acknowledged that Dr. Belostocki had reported, on January 29, 2010, that plaintiff "had several years of complaints of fatigue and polyarthralgia, and could have underlying connective tissue disease or, alternatively fibromyalgia, thyroid disease or a regional musculoskeletal syndrome," but noted that "no definite diagnosis was made." (AR 19.) The ALJ made no mention of Dr. Nunag or his treatment notes. In short, the ALJ found that that there "are no medical records that indicate significant symptoms, signs, or limitations until December 1, 2014." (*Id*.)

As of December 1, 2014, the ALJ found that plaintiff had the RFC to perform the full range of sedentary work, with the same limitations that existed before that date. (AR 20-21.) In reaching this conclusion, the ALJ found that plaintiff's allegations about her symptoms and limitations after December 1, 2014 were generally credible. (AR 20.) The ALJ based this conclusion primarily on the December 1, 2014 consultative examination by Dr. Skeene. (*See* AR 20-21.) He noted that Dr. Skeene diagnosed plaintiff with Dupuytren's contracture of both hands, as well as plantar fasciitis in her right leg. (AR 20.) He also detailed Dr. Skeene's findings as to plaintiff's exertional limitations. (*Id.*) The ALJ gave "significant weight" to "Dr. Skeene's opinion, which is the first indication of a significant limitation of use of the hands." (AR 21.)

The ALJ also based this finding on the February 26, 2015 report from Dr. Bedell, in which Dr. Bedell indicated that plaintiff "has bilateral arthritis of the hands." (*Id.*) The ALJ gave "great weight" to "Dr. Bedell's opinion because he is a treating source and therefore had an excellent opportunity to become familiar with [plaintiff's] physical and mental status." (*Id.*) In this analysis, the ALJ stated that "[m]edical records support the alleged severity of the claimed impairments, and the characterization of pain and other symptoms is consistent with the objective evidence, as of December 1, 2014, which lends credence to [plaintiff's] allegations." (*Id.*)

At the final step of the five-step process, the ALJ determined that, considering plaintiff's age, education, work experience, and residual functional capacity before December 1, 2014, there were jobs that existed in significant numbers in the national economy that plaintiff could perform. (AR 22.) In contrast, the ALJ found that, as of December 1, 2014, considering plaintiff's age, education, work experience, and residual functional capacity, there were no jobs in the national economy that plaintiff could perform. (AR 22-23.) Consequently, the ALJ determined that plaintiff was disabled as of December 1, 2014, and did not qualify for disability benefits before that date.

C. Analysis

Plaintiff challenges the Commissioner's decision that she was not disabled during the Relevant Period—September 19, 2011 to November 30, 2014. She asserts two arguments: first, that the ALJ failed to adequately develop the record and, second, that plaintiff's inability to use public transportation during that period mandates a finding that she was disabled. As set forth below, the Court concludes that a remand is required because the ALJ failed to adequately develop the record. Moreover, once the

7

record is adequately developed, the ALJ should analyze the plaintiff's inability to use public transportation in the context of the entire record.

1. Failure to Develop the Record

Social Security Regulation ("SSR") 83–20 establishes guidelines for determining a disability onset date. Under this regulation, "[t]he starting point in determining the date of onset of disability is the individual's statement as to when disability began." SSR 83–20. The alleged onset date "must be accepted if it is consistent with all available evidence." *McCall v. Astrue*, No. 05 Civ.2042(GEL), 2008 WL 5378121, at *18 (S.D.N.Y. Dec. 23, 2008) (collecting cases). "Where the alleged onset date is not consistent with the available evidence, further development of the record to reconcile the discrepancy is appropriate." *Id*. If "the medical evidence is insufficient to establish a precise date, the date can be inferred." *Id.* (quoting *Felicie v. Apfel*, No. 95 Civ. 2832, 1998 WL 171460, at *4 (S.D.N.Y. Apr. 13, 1998)). In that circumstance, however, it is "essential" that the ALJ consult a medical advisor to aid in determining the onset date. *Cataneo v. Astrue*, No. 11-CV-2671 (KAM), 2013 WL 1122626, at *16 (E.D.N.Y. Mar. 17, 2013) ("[C]ourts have found it 'essential' for the Commissioner to consult a medical advisor where, as here, a claimant does not have contemporaneous medical evidence from the period around his alleged disability onset date; the record is ambiguous with respect to onset date; and claimant's disability onset date must therefore be inferred from present medical evidence."). Overall, SSR 83–20 mandates that "the established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record," and that the ALJ must provide a "convincing rationale" for the date selected. SSR 83–20.

Under this legal framework, several courts have held that the Commissioner "may not rely on the first date of diagnosis as the onset date simply because an earlier diagnosis date is unavailable." *McCall*, 2008 WL 5378121, at *18. Similarly, the Commissioner may not "adopt[] some other equally arbitrary onset date, such as the date on which the claimant applied for SSI benefits, received a consultative examination, or appeared before an ALJ at an administrative hearing." *Id.* (collecting cases). "The Commissioner's failure to adhere to the guidelines set forth in SSR 83–20 when determining a claimant's disability onset date constitutes grounds for remand when the Commissioner's determination of disability onset date is not otherwise supported by substantial evidence." *Cataneo*, 2013 WL 1122626, at *17.

To support her contention that the ALJ failed to adequately develop the record, plaintiff points to the fact that the ALJ did not obtain treatment records from Dr. Bedell. As noted above, plaintiff identified Dr. Bedell as her primary care physician at the administrative hearing. Plaintiff testified that Dr. Bedell had been treating her since she had returned from Florida in October 2013, but that he was also her primary care doctor before she moved. (AR 40.) At the end of the administrative hearing, the ALJ told plaintiff that he would "try to obtain" records from Dr. Bedell. As described above, the ALJ did receive a February 26, 2015 medical report and functional assessment from Dr. Bedell. (AR 495-500.) However, the ALJ did not receive treatment records from Dr. Bedell. Plaintiff argues that the absence of treatment records from Dr. Bedell disadvantaged plaintiff because those records could have contained evidence of plaintiff's significant limitations in the use of her hands earlier than December 1, 2014.

The Court concludes that the ALJ failed

8

to adequately develop the record with respect to the alleged onset date. Plaintiff's alleged onset date was September 19, 2011, the date on which her employment as an x-ray technician ended. The ALJ then failed both to develop the record generally with regard to the Relevant Period or to seek "consult[ation] [with] a medical advisor," if contemporaneous evidence could not be obtained. *Cataneo*, 2013 WL 1122636, at *16. The ALJ's determination states that "[t]here are no medical reports or records that indicate significant symptoms, signs, or limitations until December 1, 2014" (AR 19), and concludes that Dr. Skeene's December 1, 2014 medical source statement "is the first indication of a significant limitation of use of the hands" (AR 21). In other words, the ALJ used Dr. Skeene's December 1, 2014 consultative examination and diagnosis as the date on which plaintiff's disability began. However, the ALJ did not receive the treatment records from Dr. Bedell which could have provided evidence that the significant limitations on the use of her hands began earlier than December 1, 2014.

The Commissioner argues that the Court should infer from the ALJ's stated intention to obtain treatment records from Dr. Bedell and the ALJ's statement that "this office contacted Dr. John Bedell, D.O.," (AR 16) that it indeed did so in a fashion sufficient to meet the "every reasonable effort" standard of 42 U.S.C. § 423(d)(5)(B). However, the Court is unable to conclude that the contact that was made concerned an initial request for treatment records (as opposed to a request for the medical report provided in February 2015), or that, if it did, a follow-up request was made as required by 20 C.F.R. §§ 404.1512(d), 416.912(d).

The Commissioner further argues that, because Dr. Bedell's medical source statement "demonstrates that the treatment records would not have established functional limitations as of an earlier date" insofar as it did not conclude greater restrictions on plaintiff's ability than the examining physicians and, presumably, was based on Dr. Bedell's prior experiences with plaintiff, the failure to obtain the treatment records is harmless. (Def.'s Mem. at 16.) Although it may be unlikely that the pre-December 1, 2014 records from Dr. Bedell would establish greater restrictions than his medical source statement from February 26, 2015, the Court is not persuaded that the failure to obtain those records would necessarily be harmless. Notwithstanding the level of limitations in Dr. Bedell's February 26, 2015 medical source statement, those earlier records could still contradict the ALJ's findings that "[t]here are no medical reports or records that indicate significant symptoms, signs, or limitations until December 1, 2014" (AR 19), and that Dr. Skeene's December 1, 2014 medical source statement "is the first indication of a significant limitation of the use of the hands" (AR 21), which were critical for the ALJ's determination of the onset date. In other words, if there were significant symptoms or limitations in Dr. Bedell's treatment records prior to December 1, 2014, those records may have caused the ALJ to develop the record even further, including by seeking medical opinions from Dr. Belostocki or Dr. Nunag (who also treated plaintiff during the Relevant Period), or consulting a medical advisor to aid in determining the onset date.

Accordingly, the Court concludes that the ALJ failed to adequately develop the record before making a determination of disability onset date and that remand on that ground is warranted.

2. Inability to Use Public Transportation

Plaintiff also argues that her inability to drive or use public transportation due to her mental impairments should compel a finding of disability. However, as the Commissioner

noted, it appears to be undisputed in the record that plaintiff could take taxis or ride in cars that she was not driving. Thus, it is far from clear that her inability to use certain forms of public transportation would necessarily support a finding of disability. In any event, it can be a relevant factor and needs to be more fully explored in connection with the alleged onset date. *See, e.g., Morrison v. Astrue*, No. CV 10-04564-JEM, 2011 WL 5974962, at *9 (C.D. Cal. Nov. 30, 2011) (remanding due to failure of the ALJ to explore how plaintiff's inability to use public transportation would affect her ability to work); *Alicea v. Astrue*, No. 07 Civ. 2676 (LBS), 2008 WL 2139151, at *2 (S.D.N.Y. May 19, 2008) ("We think that the case must be remanded for the ALJ to consider plaintiff's claim that she cannot use public transportation and thus is incapable of finding and holding a job."); *Andino v. Bowen*, 665 F. Supp. 186, 192 (S.D.N.Y. 1987) ("Indeed, in light of Andino's inability to take a bus or subway by herself, it is not only clear that Andino is unable to work, but it is hard to imagine how she could even get to work on a regular basis."). Thus, on remand, the ALJ should also consider the plaintiff's inability to use certain forms of public transportation in the context of the entire fully developed record.

## IV. CONCLUSION

For the reasons set forth above, plaintiff's motion for judgment on the pleadings is denied. The Commissioner's cross-motion for judgment on the pleadings is also denied. The case is remanded to the ALJ for further proceedings consistent with this Memorandum and Order.

SO ORDERED.



JOSEPH F. BIANCO
United States District Judge

Dated: May 9, 2019
       Central Islip, New York

\*\*\*

Plaintiff is represented by Christopher James Bowers of the Center for Disability Advocacy Rights (CEDAR), 100 Lafayette St., Ste. 304, New York, New York 10013. The Commissioner is represented by Assistant United States Attorneys Matthew Mailloux and Prashant Tamaskar of the United States Attorney's Office, Eastern District of New York, 271 Cadman Plaza East, 7th Floor, Brooklyn, New York 11201.